## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RUSS M. HERMAN AND ARNOLD LEVIN,** | **:** | **Case No. 2:12-cv-00497** |
| | **:** | |
| **Plaintiffs,** | **:** | |
| | **:** | **SECTION "L"** |
| **v.** | **:** | |
| | **:** | **JUDGE ELDON E. FALLON** |
| **CATAPHORA, INC. AND ROGER** | **:** | |
| **CHADDERDON,** | **:** | **MAG. JUDGE WILKINSON** |
| | **:** | |
| **Defendants.** | **:** | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE PURSUANT TO FED.R.CIV.P. 12(b)(2) AND 12(b)(3)

## I.  INTRODUCTION

Plaintiffs hereby respond to the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue Pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(3).

Plaintiffs Levin and Herman instituted litigation against the the Cataphora Defendants, Roger Chadderdon and Cataphora, Inc., after becoming aware of the Cataphora Defendants' campaign to slander Plaintiffs' reputations in the midst of several nationwide settlements affecting Chinese drywall.  Prior to the instant litigation, the Cataphora defendants heavily solicited the business of numerous litigants in MDL 2047.   The Cataphora defendants successfully (albeit through subterfuge and fraud) were able to contract with the Plaintiffs Steering Committee of MDL 2047 (the "PSC") to provide the court-appointed committee with litigation support services.  Immediately upon Plaintiffs' Liaison and Lead counsel discovering the impropriety of the contract, they terminated it.  Thereafter the Cataphora Defendants

1

instituted litigation in California regarding the private contractual dispute.  Following the PSC's appeals from judgments entered in favor of Cataphora after an error-laden jury trial, Mr. Chadderdon as a principal of Cataphora engaged in a targeted effort to to defame the PSC, Mssrs. Levin and Herman in particular.  This slanderous campaign (which included misrepresenting the nature of judicially approved settlements by this Court in MDL 2047 and other contacts with Defendants Liaison Counsel) was instituted with design and malicious intention to force the Plaintiffs to abandon their appeals and to force a settlement by negatively affecting the Plaintiffs' standing and reputations in this jurisdiction.  Under these circumstances – where intentional acts done outside the state have consequences or effects within the state  – personal jurisdiction can be asserted upon the offending parties consistent with Due Process.

Not only can this Court assert personal jurisdiction upon the Cataphora Defendants, but venue is proper here as well.  Mr. Herman resides in this district.  Mr. Levin was appointed to be lead counsel and appears frequently in this district in order to fulfill his duties.  The Catpahora defendants' defamatory communication was directed at this jurisdiction.  In addition, the Cataphora Defendants' malicious communications with MDL 2047 Defendants Liaison Counsel occurred here.  Thus, the proper predicate for venue in the Eastern District is present.

As discussed in detail below, the Cataphora's Motion to dismiss is without merit.

## II.  FACTUAL BACKGROUND

Prior to and following the formation of MDL 2047, Cataphora centered its focus of business activities (through Defendant Chaderdon) on the Eastern District of Louisiana. Amended Complaint  ¶8.   The Cataphora defendants were intent on working on the Chinese Drywall Litigation and sought a contract with any of the primary counsel involved in MDL 2047,

2

including the Frilot Firm and Greenberg Traurig. Id. ¶9.   But the Cataphora Defendants

considered the "real prize' to be the PSC and they sought out Plaintiff Russ Herman, the court-

appointed Plaintiffs' Liaison Counsel and ex-officio member of the PSC in MDL 2047, and

Plaintiff Arnold Levin, the court-appointed Lead Counsel and member of the PSC in MDL 2047.

*Id.*  ¶¶4, 5, 9, 10.  As a consequence, Cataphora put a full court press on the Plaintiffs.  *Id*. ¶13.[1]

   As a result of these early efforts, the PSC entered into negotiations with Cataphora to

provide litigation support services in MDL 2047.  Id. ¶15.  Jerrold Parker, a court-appointed

member of the PSC,[2] was tasked to perform these negotiations on behalf of the PSC. [Epstein

Affidavit, Exb. 2].[3]  Cataphora understood that under the Plaintiffs' oversight, the PSC reached a

tentative agreement for Cataphora to provide litigation support services in MDL 2047.

Amended Complaint ¶¶16, 17.

   The Cataphora Defendants in the last contract provided to Plaintiffs had snuck into it a

---

[1]  The Cataphora Defendants accompanied their motion with an Affidavit of Mark
Epstein wherein Mr. Epstein disputes this fact.  Epstein Affid. ¶11.  Since no discovery in this
matter has occurred the Court should agree that under the applicable *prima facie* standard, the
plaintiffs have shown that the Cataphora defendants targeted the Eastern District.  *See infra* at
Section III(A).  Should the Court believe that a preponderance standard applies, additional factual
discovery is plainly in order.  *See generally, In Chinese-Manufactured Drywall Products
Liability Litigation*, No. 10-39568, Order (5th Cir. Nov. 17, 2010)(Per curiam order granting
remand to Taishan Gypsum Co., Ltd for purposes of discovery).

[2]  *See In re Chinese Manufactured Drywall Products Liability Litigation*, MDL 2047,
Pretrial Order No. 8 (E.D.La. July 27, 2009) available at
http://www.laed.uscourts.gov/Drywall/Orders/PTO8.pdf.   PTO No. 8 establishes the PSC, which
is an entity that only exists in the MDL as a consequence of this this Court's order.

[3]  Indeed, the contract Mr. Parker signed on behalf of the PSC acknowledges that it is the
PSC (a creature of PTO No. 8) that is a party to the contract, not Mr. Parker.  The Cataphora
Defendants' focus on Mr. Parker is therefore misplaced.

"success fee" and a "non-refundable lump sum fee".  *Id.* ¶17.  This contract was invalid and unenforceable because of these improper provisions.  *Id.*  The Plaintiffs properly terminated the illegal and invalid contract shortly after execution when the success fee was discovered.  *Id.* ¶19.

The Cataphora defendants sued the PSC for breach of contract in the United States District Court for the Northern District of California.  *Id.* ¶20.  Even though the presiding Magistrate Judge in that action found the "non-refundable fee" illegal, he allowed the Cataphora defendants to proceed to a jury trial using the illegal non-refundable fee as the basis for their damages calculation.  *Id.* ¶¶19, 20.  At that trial, the Cataphora defendants obtained several judgments against the Plaintiffs.  Those judgments were timely appealed and the appeals are pending before the United States Court of Appeals for the Ninth Circuit.  *Id*. ¶20.

Shortly after the jury verdict in the California proceedings, the Cataphora Defendants orchestrated a deliberate and malicious campaign designed to defame and commercially disparage the PSC Members publicly, in front of the legal community and their clients who are plaintiffs in the Chinese Drywall proceedings.  *Id.*  ¶¶ 2, 22.  Cataphora has falsely accused the PSC of taking half of the Chinese Drywall settlement monies, which have been earned for the benefit of the Chinese Drywall claimants, for themselves.  Cataphora has made these unauthorized communications with the class during the critical notice period before the fairness hearing to determine final approval of the settlements, in an effort to encourage opt-outs and force a settlement with the PSC of Cataphora's claims.[4]  Cataphora's unlawful acts may derail the settlements achieved thus far in the Chinese Drywall proceedings.

---

[4]  *See* Plaintiffs' Response in Opposition to Defendants' Special Motion to Strike Pursuant to Louisiana's Anti-SLAPP Statute, Section B.

4

Mr. Chadderdon has made a series of defamatory statements about the PSC Members, which were published over the internet on or about September 26, 2011.  *Id.*  A website, Abovethelaw.com, quoted Mr. Chadderdon as making a number of defamatory statements about the PSC Members, which have been published and are now available to the PSC's clients, prospective clients, members of the legal community, and the public:

> These guys [the PSC Members] are the worst of hypocrites that you can possibly find ... They claim to be trying to help the little guy, but what they're doing is trying to put more money in their own pockets.  Everyone knows that, but this is a case that illustrates it beyond what I have ever seen.

*Id.*  These defamatory statements were intended to harm the Defendants' standing in the legal community and negatively impact Defendants' image before prospective jurors.  *Id.* ¶¶ 30-31. They were also intended to undermine the leadership of the PSC.  *Id.* ¶24.

In addition, Mr. Chadderdon contacted a prominent member of the Defendants' Steering Committee ("DSC") in the Chinese Litigation, Kerry Miller, and offered to provide valuable insights about the PSC Members and their litigation strategies.  *Id.* ¶32 and Exhibit "C".

More recently, one of Cataphora's marketing associates, Lauren Vilders, contacted a CBS affiliate in Miami Florida, WFOR, and asked CBS to run a story attacking PSC Member Victor Diaz, with respect to the contract disputes between the PSC and Cataphora.  Ms. Vilders' communication with CBS contains numerous defamatory statements:

> I'm contacting you about a story that you might find of interest for CBS Miami regarding prominent Miami attorney Victor Manuel Diaz of VM Diaz and Partners law firm. The story relates to the Chinese Drywall class action lawsuit.
>
> Mr. Diaz is a member of the Chinese Drywall Plaintiffs' Steering Committee - a group of very wealthy plaintiffs' attorneys who

specialize in class action lawsuits such as this, purportedly working for the little guy.  But they have forced a small employee-owned company [Cataphora] to spend more than $1 million in legal fees to recover approximately $300,000 these attorneys owe it.  Despite a jury verdict awarding Cataphora the money owed, plus costs, the plaintiffs still have not paid Cataphora a single penny.  If you include the amounts spent on both sides' legal fees, something like an estimated $3 million has been spent arguing over $300,000 by these hot shot attorneys, and they continue to drag the case to an appeal, hoping to bankrupt the small company with which they had a valid contract. This is a striking local example of the kind of behavior that drives national calls for tort law reform, which are sure to be an issue yet again in the forthcoming presidential and congressional elections.

Cataphora, an award-winning investigative software company that has been featured in media such as The New York Times, NPR, Fortune, Business Week etc., was initially retained by the Chinese Drywall Plaintiffs' Steering Committee to use its software to provide both investigative services and e-discovery.  However, subsequent to these plaintiffs signing the contract, and getting court permission to use these funds for this purpose, they defaulted on the contract, instead doing the work, for which they were not well qualified, themselves.  These local plaintiffs' attorneys have already collected over $1 billion from defendant companies on behalf of the victims of Chinese drywall. However, it is estimated that close to half of that money goes to plaintiff expense funds and contingency fees. In other words, upwards of $500 million has gone to these plaintiffs' attorneys, but they can't pay their $300,000 contract as awarded by a jury.

Such bad behavior should be exposed to the public, especially in this election year. I would be happy to discuss further details of this matter with you.

See *Id.*, Amended Exhibit D and Exhibit "C" to Defendants' Motion for a Preservation Order in this case.  [Doc # 3-6].[5]

---

[5]  This statement is completely false.  In the Chinese Drywall litigation, the Knauf Defendants agreed to pay the PSC and others attorneys' fees totaling only $160 million, in

(continued...)

The Cataphora Defendants' actions demonstrate that they are engaged in a protracted and deliberate campaign that is designed to defame and commercially disparage the PSC Members. In addition to the above efforts by Cataphora to smear Plaintiffs' good names, Plaintiffs believe Cataphora is reaching out to other members of the media and the legal community to besmirch them as a means of forcing the PSC to abandon their Ninth Circuit appeal and to settle with the Cataphora Defendants.

Cataphora's false statements about the PSC targeted to the MDL 2047 community in Louisiana are interfering with settlement class notices authorized by the Court. This Court has preliminarily approved five class settlements pending a joint fairness hearing scheduled for November 13, 2012 and shortly will be requested to approve four more settlements. *See* http://www.laed.uscourts.gov/Drywall/Settlements.htm. Cataphora's public attacks on the integrity of Class Counsel (i.e., the Plaintiffs) during the notice period constitute unauthorized communications with the class, in violation of this Court's orders, requiring attention that can only be provided by this Court.

## III.   ARGUMENT

### A.  The Applicable Legal Standard on a Motion to Dismiss for Lack of Jurisdiction

When, as here, a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to show that personal jurisdiction exists. *See Stuart v. Spademan*,

---

[5] (...continued)
addition to the funds that will be paid to the individual plaintiffs, which are expected to range between $800 million and $1 billion. *See* Knauf Settlement Agreement at § 14, available at http://www.laed.uscourts.gov/Drywall/Settlements/12-21-11.kpt.global.settlement.pdf. Thus, any payment of attorneys' fees to the PSC will not impact the plaintiffs' recovery. Further, all awards of attorneys' fees must be approved by this Court. To date, no such fee awards have been made or considered by this Court.

772 F.2d 1185, 1192 (5th Cir.1985); *Southern United States Trade Ass'n v. Unidentified Parties*,

2011 WL 2457859, * 4 (E.D.La. June 16, 2011)(Fallon, J.)[hereafter "*SUSTA*"]. When a court

rules on this issue without a full evidentiary hearing, plaintiffs need only make a *prima facie*

showing of jurisdiction.  *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.1994).[6] The Fifth Circuit

Court of Appeals has held that "on a motion to dismiss for lack of jurisdiction, uncontroverted

allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts

contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of

determining whether a *prima facie* case for personal jurisdiction exists." *Ruston Gas Turbines,

Inc. v. Donaldson Company, Inc.*, 9 F.3d 415, 418 n.3 (5th Cir. 1993); *Clemens v. McNamee*, 615

F.3d 374, 378 (5th Cir. 2010).

### B.    This Court May Exercise Jurisdiction over the Cataphora Defendants under the Due Process Clause of the Fourteenth Amendment.

The Due Process Clause of the Fourteenth Amendment limits the Court's power to assert

*in personam* jurisdiction over a non-resident by guaranteeing that no federal court may assume

jurisdiction over a foreign defendant unless the defendant has meaningful "contacts, ties, or

relations" with the forum state.  *International Shoe Co. v. State of Washington*, 326 U.S. 310,

319 (1945); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1994).

The "constitutional touchstone" of the inquiry to determine whether this Court may exercise

_____

[6]   While personal jurisdiction must be established by a preponderance of the evidence following an evidentiary hearing, *see Walk Haydel & Associates, Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241-42 (5th Cir. 2008), the Cataphora Defendants' jurisdictional motion is currently set for oral argument as opposed to an evidentiary hearing.  However, if the Court determines that an evidentiary hearing is appropriate then plaintiffs request that a Rule 16 conference be conducted so that a suitable discovery plan can be promptly implemented.

personal jurisdiction over Taishan is whether the defendant "purposefully established minimum contacts in the forum State." *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 108-09 (1987).

Jurisdiction may be general or specific. When a defendant's contacts with the forum are "continuous and systematic," a federal court may exercise "general" jurisdiction over any action brought against that defendant regardless of its relation to the contacts in the forum. *Helicopteros*, 466 U.S. at 414 n.9 & 415. Where contacts are less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 414 n.8; *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987). Here, Plaintiffs contend only that specific jurisdiction exists. All of the alleged causes of action before this Court arise out of and are related to the Cataphora Defendants' activities directed to defame the Plaintiffs in Louisiana, a fact which is self-evident since the status of Plaintiffs as members of MDL 2047 PSC exists only in this district.

The leading case on specific jurisdiction based upon defamation claims is *Calder v. Jones*, 465 U.S. 783 (1984). *Calder* was a libel case brought in California, by the actress Shirley Jones. The Plaintiff was a California resident who sued the National Enquirer, a Florida corporation, and two of its employees who authored and edited the defamatory article. The latter defendants challenged whether they could be subject to personal jurisdiction in California.

The Supreme Court reminded the petitioners, who were similarly situated to the Cataphora defendants here, that they were "not charged with mere untargeted negligence." *Id.* at 789. Rather, they published an article that they knew would have a potentially devastating impact upon Jones. *Id.* The Court further stated that because defendants had to realize that the

brunt of the injury would be felt by Jones in the state in which she lived, "petitioners must 'reasonably anticipate being haled in a court there' to answer for the truth of the statements made in their article." *Calde*r, 465 U.S. at 790.  "In this case, Petitioners are primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis." *Id*. "An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly caused the injury in California." *Id.*

Thus, under *Calder*, "an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir.1999) (citing *Calder*, 465 U.S. at 789–90).  According to the Supreme Court:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.

*Calder*, 465 U.S. at 788-89 (citations omitted).

Likewise, Plaintiff Herman is a Louisiana resident and Plaintiff Levin has been appointed as Plaintiffs' Lead Counsel in MDL 2047 in Louisiana and the defamatory statements by Defendants, which were published on Abovethelaw.com, concerned both Plaintiffs' Louisiana

activities and their standing before this Court in the Chinese Drywall Litigation.[7]  Both Plaintiffs have their careers currently centered in cases pending in the Eastern District of Louisiana. Further, the brunt of the harm, in terms of damages to Plaintiffs' professional reputation and standing before this Court, was inflicted in this forum.  Also, their clients who were exposed to these defamatory statements are litigants in Louisiana.  Thus, Louisiana is the focal point of the story and the harm suffered by Plaintiffs.

This Court can readily infer that the Cataphora Defendants, after vigourously pursuing a contract in Louisiana with the MDL 2047 PSC, knew that the Plaintiffs were present in this District and active in Chinese Drywall litigation.  Who, other than Plaintiffs' MDL No. 2047 clients or absent class members, are the "little guys" Mr. Chadderdon references?   Plainly therefore, the defendants' statements also constitute a direct assault on the class settlements which are currently under review by this Court.  This attack on the class settlements is an unauthorized communication with each class as it is designed to interfere with the settlement proceedings underway in this Court.[8]  Accordingly, Defendants are subject to personal jurisdiction in Louisiana since the effects of their defamatory statements were known by them to "have a potentially devastating impact upon [Plaintiffs] ... [a]nd they knew that the brunt of that injury would be felt by  ..." Plaintiffs in Louisiana.  *Calder, 465 U.S.*. at 789-90.

---

[7]  Both Messrs. Herman and Levin have enjoyed a long-standing practice and excellent reputation before this Court.  *See, generally, In re Propulsid Products Liability Litigation*, MDL No. 1355, PTO No. 3 (E.D.La. Oct. 23, 2000), available at propulsid.laed.uscourts.gov/Orders/order3.pdf; *In re Vioxx Products Liability Litigation,* MDL No.1657, PTO No. 6 (E.D.La. Apr. 8, 2005), available at Vioxx.laed.uscourts.gov/Orders/vioxpto6withA.pdf.

[8]  *See Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1201 (11th Cir.1985).

While Defendants attempt to distinguish the instant matter from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), the "effects test" utilized by the Supreme Court in *Calder* is directly on point and establishes that this Court may properly exercise personal jurisdiction over Defendants.  Indeed, this Court's opinion in *SUSTA* makes plain that in an age of "rapid changes in technology" a defamatory statement in California can easily be targeted to effect harm in Louisiana, if not "all corners of the United States."  *SUSTA*, 2001 WL 2457859 at *5.

In *SUSTA*, the executive and deputy directors of a Louisiana non-profit corporation were the targets of defendant Guddh's defamatory postings on several websites.  Guddh, a Florida citizen, (much like the Cataphora Defendants) had in prior dealings with the plaintiff; he tried to secure assistance from SUSTA and as a result of that experience sought to defame the Plaintiffs on the internet.   This Court surveyed *Calder* and its Fifth Circuit progeny to conclude that personal jurisdiction could be exerted upon the defendant based upon the following standard:

> *Calder* requires a showing that "the forum be the focal point" of both the statements and the harm alleged. *Revell v. Lidov*, 317 F.3d 467, 474 n. 48 (5th Cir.2002). The element that the forum state be the focal point of the statement "must be demonstrated by showing that (1) the subject matter of and (2) the sources relied upon for [the allegedly defamatory statements] were in the forum state." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 426 (5th Cir.2005); *see also Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir.2010).  Meanwhile, the element that the forum state be the focal point of the harm requires a showing that the defendant knew that the "brunt of the harm" would be borne in that state. *Revell*, 317 F.3d at 475.

*SUSTA,* 2011 WL 2457859 at *6.

Reviewing the record in the light most favorable to the Plaintiffs the court recognized that Plaintiffs were residents of Louisiana and the Plaintiffs' principle place of business was in the

State as well.   In light of the defendant's statements that the plaintiffs were thieves and should get out of Louisiana, the court was able to readily conclude that the first element – the subject matter of the statements –  were focused on the forum.  *Id*. at *7.  But the Court also observed that defamatory statements do not have to explicitly refer to the forum for the court to infer that the "focal point" can be the forum.  *Id.* at *8. ("In *Calder*, the Supreme Court did not hold that all defamatory statements must specifically address only the forum state for personal jurisdiction to be proper. And neither has the Fifth Circuit suggested that such a requirement exists.").  As to the second element, the court observed that the Defendant's prior dealings with the Plaintiffs in Louisiana sufficed to meet the sources relied upon requirement.  *Id*. at *6.  Finally, the Court observed that because of Defendant's prior interactions with the Plaintiffs Guddh came to know they lived and worked in Louisiana and therefore the brunt of their injury would take place in Louisiana.  *Id.* at *7.

The Court's reasoning in *SUSTA* is applicable here.  Viewing the record in the light most favorable to the Plaintiffs, the subject mater of the allegedly defamatory statements is in the forum state.  Although Mr. Chadderdon avoided explicit mention of Louisiana, as discussed previously, it is plain from the context that he was addressing the Plaintiffs and their clients or absent class members in MDL 2047 here in Louisiana.  Nor is there any question that Defendants contacts with Mr. Miller in Louisiana were focused on this forum.  Further, like defendant Guddh in *SUSTA*, the Cataphora Defendants had extensive prior dealings with the Plaintiffs in Louisiana that were the subject of Mr. Chadderdon's comments, exclusive of the trial in California.  *Id.* at *6 ("If one were to assume that Defendant simply conjured up the defamatory statements, it remains the case that what inspired Defendant to do so was his prior interactions with SUSTA

and its employees in Louisiana.").  Finally, the focal point of the defendants' defamatory acts are plainly in Louisiana.  This is where Mr. Herman resides and where both Plaintiffs enjoy their executive positions in MDL 2047, which positions have been tarnished by defendants' actions.

Wherefore, there plainly exist sufficient contacts for this Court to find specific jurisdiction over the defendants.

**C.  Venue is Proper in the Eastern District of Louisiana**

The Cataphora Defendants also contend that venue does not lie in the Eastern District of Lousiana.  Under 28 U.S.C. §1391(a)(2), venue lies in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  Defendants contend that Mr. Chadderdon's statements took place in California and therefore venue can only reside in California.  But as this court observed in *SUSTA*, venue can be appropriate in more than one jurisdiction.  *SUSTA*, 2011 WL 2457859 at *13.  And in tort cases like this, venue can be determined not only where the tortious actions occurred, but also where the brunt of the harms from those actions are felt.  *Id.*

As discussed at length above, Mr. Herman resides in this district, both Plaintiffs' executive appointments exist in this district, and a substantial amount of the events and occurrences giving rise to the claims were targeted at and occurred in this district.  Under these circumstances, just as in *SUSTA*, venue is proper here.[9]

---

[9]  Defendants alternative suggestion that the matter should be transferred to the Northern District of California is specious.  After purposefully attempting to distance this action from the contractual dispute taking place in California for purposes of defeating personal jurisdiction, the Cataphora  Defendants now embrace the notion that because the breach of contract action is taking place in California, the two cases should proceed in the same district.  The argument is disingenuous at best.  Not only is the breach of contract dispute concluded in the California

(continued...)

**IV.  CONCLUSION**

For the reasons set forth above, the Cataphora Defendants' Motion to Dismiss should be denied.

Dated: July 3, 2012                    \_\_/s/ Fred S. Longer_____
                                       Arnold Levin, Esquire
                                       Fred S. Longer, Esquire
                                       Levin, Fishbein, Sedran & Berman
                                       510 Walnut Street, Ste. 500
                                       Philadelphia, PA 19106
                                       Phone: (215) 592-1500
                                       Fax: (215) 592-4663


                                       Russ M. Herman, Esquire (LA Bar No. 6819)
                                       Leonard A. Davis, Esquire (LA Bar No. 14190)
                                       Stephen J. Herman, Esquire (LA Bar No. 23129)
                                       HERMAN, HERMAN, KATZ & COTLAR, LLP
                                       820 O'Keefe Avenue
                                       New Orleans, Louisiana 70113
                                       Phone: (504) 581-4892
                                       Fax: (504) 561-6024
                                       Ldavis@hhkc.com

---

[9]  (...continued)

district court and on appeal, but venue plainly lies in this district.  The defendants have clearly not met their burden of "demonstrating that the case should be transferred to an alternate forum." *SUSTA*, 2011 WL 2457859 at *13, *quoting, Laitram Corp. V. Hewlett-Packard Co.*, 120 F.Supp.2d 607, 608 (E.D.La. 2000).   Accordingly, plaintiffs' choice of forum should not be disturbed.  *Id.*

## CERTIFICATE OF SERVICE

       I hereby certify that the foregoing Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue Pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(3) was electronically filed with the USDC E.D.La. by using the CM/ECF System, which will send a notice of electronic filing to all parties on this 3rd day of July, 2012.

                           Respectfully submitted,

Dated: July 3, 2012               /s/ Fred S. Longer
                              Fred S. Longer
                              Levin, Fishbein, Sedran & Berman
                              510 Walnut Street, Suite 500
                              Philadelphia, PA 19106
                              215-592-1500 (phone)
                              215-592-4663 (fax)
                              Flonger@lfsblaw.com
                              *Counsel for Appellants*