UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RUSS M. HERMAN | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 12-497 |
| | * | |
| CATAPHORA, INC. | * | SECTION "L" (2) |

## ORDER & REASONS

Before the Court are Defendants Cataphora, Inc. and Roger Chadderdon's (collectively "Cataphora") Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) (R. Doc. 13), and Cataphora's Special Motion to Strike Pursuant to Louisiana Anti-SLAPP Statute (R. Doc. 15).  For the following reasons, IT IS ORDERED that Cataphora's Motion to Dismiss is GRANTED.  IT IS FURTHER ORDERED that this matter is transferred to the U.S. District Court for the Northern District of California.  IT IS FURTHER ORDERED that Cataphora's Motion to Strike is DENIED AS MOOT.

## I.    BACKGROUND

The present matter arises from alleged defamation and interference with prospective advantage following a contract dispute and litigation which are tangential to another case before this Court, MDL 2047, *In re Chinese Drywall Products Liability Litigation*.  Plaintiffs Russ M. Herman and Arnold Levin are, respectively, the Court-appointed Liaison Counsel and Lead Counsel for the Plaintiffs' Steering Committee (the "PSC") in MDL 2047.  Defendant Cataphora, Inc. is a California corporation that provides litigation support and document retrieval services. Defendant Roger Chadderdon is a principal of Cataphora.  From April to June 2009, Cataphora sought to provide its litigation services to a number of major parties in MDL 2047, including the

MDL plaintiffs represented by the PSC.

The PSC and Cataphora eventually entered into negotiations for Cataphora to provide litigation support services to the PSC in MDL 2047.  Throughout the months of August and September 2009, the parties negotiated and drafted contract terms.  On October 6, 2011, the PSC and Cataphora finally entered into a contract, but because of a provision included in the contract by Cataphora which the PSC opposed, the PSC terminated the contract.

Accordingly, Cataphora filed suit against the PSC for breach of contract in the U.S. District Court, Northern District of California.  On September 19, 2011, Cataphora obtained a judgment against the PSC, including attorneys' fees and interest.  The PSC is currently appealing the case to the Ninth Circuit Court of Appeals.

Following entry of the judgment, Mr. Chadderdon made a series of statements about the breach of contract litigation which were published on the internet website, Above the Law, at abovethelaw.com, on or about September 26, 2011.  In addition, it is alleged that Mr. Chadderdon contacted Liaison Counsel for the Defendants' Steering Committee ("DSC") in MDL 2047, offering to provide insight about the PSC and its litigation strategies.

On February 23, 2012, Plaintiffs filed suit against Cataphora in this Court alleging defamation and interference with prospective advantage arising from Chadderdon's statements to Above the Law and the DSC.  (R. Doc. 1).  Plaintiffs seek from Cataphora compensatory and punitive damages, interest, attorneys' fees, and costs.  *See id.*  On February 28, 2012, Plaintiffs filed a First Amended Complaint.  (R. Doc. 6).

Sometime after the filing of the Complaint, the present matter was transferred and consolidated with MDL 2047.  *See* (R. Docs. 5, 7).  Cataphora filed a motion seeking to have the

case de-consolidated from the MDL litigation and transferred back to the Section to which it was originally allotted.  The Court held a hearing on this motion and ordered that the case be de-consolidated from the MDL but that the case remain before Judge Fallon.

On June 5, 2012, Cataphora filed the present motions, which were heard by the Court on oral argument.  The Court now issues its summary, analysis, and rulings on the motions.

## II. CATAPHORA'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION & IMPROPER VENUE PURSUANT TO FED. R. CIV. P. 12(B)(2) & 12(B)(3)

### A. Present Motion

#### 1. *Cataphora's Motion*

Cataphora filed the present Motion, first, seeking dismissal for lack of personal jurisdiction in the Eastern District of Louisiana, and second, arguing that venue is improper in the Eastern District, also requiring dismissal, or alternatively, transfer to the Northern District of California.  According to Cataphora, it lacks the requisite minimum contacts with Louisiana for personal jurisdiction and none of the events giving rise to this litigation occurred in the Eastern District of Louisiana.

#### 2. *Plaintiffs' Response*

Plaintiffs filed a Response in opposition to Cataphora's Motion.  (R. Doc. 19).  Plaintiffs first argue that personal jurisdiction is proper in Louisiana because: Mr. Herman is a Louisiana resident; Plaintiffs have been appointed to leadership positions on the PSC in MDL 2047 pending in this District; the defamatory statements concern Plaintiffs' activities in MDL 2047; Plaintiffs' careers are centered around cases pending in the Eastern District of Louisiana; Cataphora vigorously pursued a contract with the PSC in Louisiana; and Cataphora knew that the

comments would cause harm in Louisiana to both Plaintiffs and class members in the settlement agreements in MDL 2047.

Second, Plaintiffs argue that venue is proper in the Eastern District of Louisiana because: Mr. Herman resides in this district; both Plaintiffs have executive appointments in MDL 2047 in this district; and a substantial number of events and occurrences giving rise to the claims were targeted at and occurred in this district.

### 3.   *Cataphora's Reply*

Cataphora filed a Reply in further support of its Motion.  (R. Doc. 22-2).  Cataphora argues that Plaintiffs fail to meet even a *prima facie* showing of personal jurisdiction, especially since Plaintiffs have failed to supply affidavits or conduct discovery.  Cataphora next argues there exists no basis for the exercise of personal jurisdiction because the forum is not the focal point of the subject statements and extraneous facts raised by the PSC in its briefing cannot be considered in this inquiry.

With these arguments in mind, the Court first turns to Cataphora's personal jurisdiction challenge.

### B.   **Personal Jurisdiction**

#### 1.   *Standard of Review*

Federal Rule of Civil Procedure 12(b)(2) provides a right to dismissal of claims against a defendant when personal jurisdiction is lacking.  "When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident."  *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir.

1985)).  "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."  *Id.*

When a court hears a Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff need only present a *prima facie* case of personal jurisdiction.  *See Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, (5th Cir. 2008).  Ultimately, however, "the plaintiff must show by a preponderance of the evidence that jurisdiction is proper."  *Id.* (citing *Brown v. Slenker*, 220 F.3d 411, 419 (5th Cir. 2000).  Here, the Court is not conducting an evidentiary hearing, so Plaintiffs need only present a *prima facie* case of personal jurisdiction.

        2.    *Applicable Law*

It is axiomatic under Fifth Circuit law that a federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if: (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the Due Process Clause of the United States Constitution.  *Clemens v. McNamee*, 615 F.3d 374, 377 (5th Cir. 2010) (citing *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)); *Seiferth v. Helicopteros Atuneros, Inc.,* 472 F.3d 266, 270 (5th Cir. 2006) (citing *Mink v. AAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999)); *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006) (quoting *Allred v. Moore & Peterson*, 117 F.3d 278 (5th Cir. 1997)); *Ouazzani-Chahdi v. Greensboro News & Record, Inc.*, 200 Fed. App'x 289, 291 (5th Cir. 2006) (citing *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)); *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993).

Because the forum here is Louisiana, the first element of personal jurisdiction requires

that the Louisiana long-arm statute be satisfied.  However, because "'the limits of the Louisiana Long-arm Statute and the limits of constitutional due process are now coextensive . . . under the express wording of the present Long-Arm Statute, the sole inquiry into the jurisdiction over a nonresident is a one-step analysis of the constitutional due process requirements.'" *Alonso v. Line*, 2002-2644 (La. 5/20/03); 846 So. 2d 745. 750 (quoting *Ruckstuhl v. Owens Corning Fiberglas Corp.*, 98-1126 (La. 4/13/99); 731 So. 2d 881, 885)).  Thus, the Court will move on to the second prong of the personal jurisdiction test under the Due Process Clause.

"The Due Process Clause 'operates to limit the power of a State to assert in personam jurisdiction over a nonresident defendant.'" *Ouazzani-Chahdi*, 200 Fed. App'x at 291 (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984)); *Asahi Metal Indus. Co., Ltd. v. Superior Court of Ca.*, 480 U.S. 102, 109 (1986); *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) (citing *Kulko v. Ca. Superior Court.*, 436 U.S. 84, 91 (1978).  Due process permits a court to exercise personal jurisdiction over a foreign defendant only when: (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945); *Paz*, 445 F.3d at 813 (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Corp.*, 253 F.3d 865, 867 (5th Cir. 2011)); *Clemens v. McNamee*, 615 F.3d 374, 377 (5th Cir. 2010) (citing *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002)); *Ouazzani-Chahdi,* 200 Fed. App'x at 291 (quoting *Revell*, 317 F.3d at 470); *Ruston Gas Turbines, Inc.*, 9 F.3d at 418 (citing *Int'l Shoe Co.*, 326 U.S. at 316)).  The limits of the Due Process Clause "have been substantially relaxed over the years . . . largely attributable to

a fundamental transformation in the American economy." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292-93 (1980) (internal citations omitted).  The Court will now address the due process requirements--minimum contacts and fairness--in turn.

> "The 'constitutional touchstone' of the inquiry to determine if personal jurisdiction can be exercised is whether the defendant 'purposefully established minimum contacts in the forum state.'" *Seifarth*, 472 F.3d at 271 (quoting *Asahi Metal Ind. Co. v. Super. Ct.*, 480 U.S. 102, 108-09 (1987)); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *Int'l Shoe*, 326 U.S. at 316).  There exist two types of minimum contacts: those that give rise to specific personal jurisdiction and those that give rise to general jurisdiction. *Clemens v. McNamee*, 615 F.3d 374, 377 (5th Cir. 2010)(citing *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)); *Seifarth*, 472 F.3d at 271; *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002); *Ruston Gas Turbines, Inc.*, 9 F.3d at 418.  Only specific personal jurisdiction is alleged by Plaintiffs.  *See* (R. Doc. 19). Specific jurisdiction exists when "the defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Clemens v. McNamee*, 615 F.3d 374, 377 (5th Cir. 2010) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *Seifarth*, 472 F.3d at 271 (quoting *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)).

> "The non-resident's purposefully directed activities in the forum must be such that he could reasonably anticipate being haled into court in the forum state." *Id.*(quoting *Burger King,* 471 U.S. at 474).  "Specific jurisdiction also requires a sufficient nexus between the non-resident's contacts with the forum and the cause of action." *Id.* at 378-79 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).  "It is essential that there

be some act by which the defendant purposefully avails himself of the privilege of conducting

activities with the forum state, thus invoking the benefits and protections of its laws." *Id.* at 379

(citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  "The 'purposeful availment' requirement

ensures that a defendant will not be hauled into a jurisdiction solely as a result of random,

fortuitous, or attenuated contacts." *Id.* (citing *Burger King*, 471 U.S. at 472).  "A single act by

the defendant directed at the forum state, therefore, can be enough to confer personal jurisdiction

if that act gives rise to the claim being asserted." *Ruston Gas Turbines, Inc.*, 9 F.3d at 419.

### 3.      *Personal Jurisdiction in the Defamation Context*

There exists a body of jurisprudence specifically involving personal jurisdiction in the

context of defamation-related claims.  The Court will now summarize these cases to put the

present matter in perspective.

The seminal defamation-related case on personal jurisdiction over a foreign defendant is

the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984).  *Calder* involved

allegations of libel in a California forum brought by a celebrity plaintiff against a national

magazine and certain of the magazine's employees responsible for the allegedly libelous article.

*See id.*  Plaintiff worked and lived in California.  *Id.* at 785.  The defendant magazine was a

Florida corporation with nationwide circulation of over five million, six-hundred thousand

copies of which were sold in California.  *Id*.  The defendants who objected to personal

jurisdiction in California were a reporter employed by the magazine and the president/editor of

the magazine, both of whom were specifically involved with the subject article.  *See id.*  The

reporter had the following contacts with California: (1) he frequently traveled to California on

business, (2) he made phone calls to sources in California for most of the information in the

article, and (3) before publication, he called plaintiff's home and read the article to her husband

to elicit comments. *See id.* at 785-86.  The president/editor had the following contacts with

California: (1) he had been to California twice, both times unrelated to the subject article, (2) he

oversaw, reviewed, approved, and edited the subject article, and (3) he declined to print a

retraction to the article. *See id.* at 586.  With regard to these contacts with California, the Court

concluded:

> The allegedly libelous story concerned the California activities of a California resident.
> It impugned the professionalism of an entertainer whose television career was centered in
> California.  The article was drawn from California sources, and the brunt of the harm, in
> terms both of respondent's emotional distress and the injury to her professional
> reputation, was suffered in California.  In sum, California is the focal point both of the
> story and of the harm suffered.  Jurisdiction over petitioners is therefore proper in
> California based on the 'effects' of their Florida conduct in California.  *Id.* at 789
> (citation omitted).

The Court rejected defendants' argument that they could not be held accountable in California

for the magazine's activities there, reasoning "petitioners are primary participants in an alleged

wrongdoing intentionally directed at a California resident."  *Id*. at 790.

Following the Supreme Court's decision in *Calder*, the Fifth Circuit has addressed

personal jurisdiction in the context of defamation-related claims on a number of occasions.  In

*Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002), the Fifth Circuit held that personal jurisdiction was

lacking over Massachusetts and New York defendants who were sued in Texas for damage to the

professional reputation and emotional distress of the plaintiff in Texas.  Plaintiff was the former

Associate Deputy Director of the FBI and a resident of Texas who was the subject of an article

written by one defendant, a Massachusetts professor.  *Id.* at 469.  This article was posted by the

professor on the website of the co-defendant, a New York college.  *Id*.  The Court first addressed

whether Texas could exercise personal jurisdiction over the New York college as a result of the

use of its website to publish the subject article.  The Court found both general and specific personal jurisdiction lacking on the basis that the maintenance of a website alone is insufficient for general personal jurisdiction and, even though the defendant's website was interactive, it did not satisfy specific personal jurisdiction under *Calder* and its progeny.  *See id.* at 470-72.  The Circuit went on to find that personal jurisdiction was also lacking over the Massachusetts professor, distinguishing *Calder*, on the bases that: (1) the article written by the professor contains no reference to Texas, (2) the article does not refer to the Texas activities of plaintiff, (3) the article was not directed at Texas readers, (4) Texas was not the focal point of the article or the harm suffered, and (5) the professor did not know that plaintiff was a resident of Texas when he posted the article.

The Fifth Circuit also addressed specific personal jurisdiction in the defamation context in *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419 (5th Cir. 2005).  *Fielding* involved claims in a Texas forum of a Texan wife and her Swiss husband, who were living and working in Germany, against two German-language news magazines for their reprint and print of allegedly defamatory articles about the plaintiffs.  The Fifth Circuit held that personal jurisdiction, both general and specific, was lacking over these defendants.  The Circuit concluded that specific jurisdiction was lacking because Texas was not the subject matter of the alleged defamatory material, since the articles focused on the couple's life in Germany, nor were the main sources for the articles in Texas.  The Circuit reached this decision despite the fact that the articles contained some references to the wife's past in Texas, interviews were conducted with Texas citizens, and one magazine hired someone to purchase the wife's Texas yearbook.  The Circuit distinguished these facts as merely "background, biographical information" and "fleeting

contacts." The Circuit supported its holding by noting that the articles impugned the plaintiffs' careers and lives in Germany, their personal tragedies discussed in the articles were suffered in Germany, their emotional distress occurred in Germany, and the articles, which were published in German and almost totally sold in Germany, were directed at a German audience.

The Fifth Circuit more recently addressed personal jurisdiction in the context of a defamation claim in *Clemens v. McNamee*, 615 F.3d 374 (5th Cir. 2010). The claims in this defamation litigation, filed in a Texas forum, arose out of statements made by defendant regarding plaintiff's use of illegal performance-enhancing drugs. Plaintiff lived in Texas, but as a professional baseball player traveled often, and defendant was plaintiff's personal trainer over a course of eight years, during which defendant traveled to Texas approximately 35 times to train plaintiff and other athletes. In 2007, defendant was granted immunity to testify that he injected plaintiff with these drugs in 1998, 2000, and 2001, in Toronto and New York. Thereafter, also in 2007, defendant's statements were published in Major League Baseball's investigative report, the Mitchell Commission Report, which was republished by every national news service and newspaper in Texas. Finally, in 2008, defendant was interviewed for and published on SI.com regarding the same statements. Considering these contacts under *Calder* and its progeny, the Fifth Circuit concluded that specific personal jurisdiction was lacking over the defendant because the statements in the case concerned non-Texas activities and the statements were neither made in Texas nor directed to Texas residents.

Finally, this Court too addressed personal jurisdiction in the defamation context in *Southern United States Trade Association v. Unidentified Parties*, 2011 WL 2457859 (E.D. La. June 16, 2011). *Southern United* arose out of allegedly defamatory statements made by the

defendant on various internet websites about plaintiffs, who live and work in Louisiana at a Louisiana non-profit corporation.  The Court denied defendant's personal jurisdiction challenge on the following bases: the subject matter of the allegedly defamatory statements was in the forum state because the non-profit and its employees were all located in Louisiana; the allegedly defamatory statements pertained to sexual and other misconduct on behalf of the plaintiffs in Louisiana; certain of the postings specifically referred to Louisiana; the sources relied upon were in Louisiana, including the writer's own alleged observations in Louisiana; and the defendant knew that the harm resulting from his statements would be felt in Louisiana because he knew the plaintiffs resided and worked in Louisiana through previous interactions with plaintiffs in the State.  The Court rejected the following bases supporting personal jurisdiction: some of the allegedly defamatory statements did not explicitly refer to Louisiana; the activities of plaintiff reached into states other than Louisiana; and the websites were passive and viewable from any location where the internet is available.

The Court now, with the foregoing jurisprudence in mind, turns to the minimum contacts at issue here.

### 4.    *Minimum Contacts in the Present Case*

The Court first addresses the evidence in the case to determine whether Cataphora has sufficient minimum contacts with the forum, Louisiana.  It is clear that the Plaintiffs have Louisiana contacts.  Plaintiff Russ M. Herman is the Court-appointed Liaison Counsel and ex-officio member of the Plaintiffs' Steering Committee ("PSC") in MDL 2047.  (R. Doc. 6).  Mr. Herman is a resident of New Orleans, Louisiana.  *Id.*  Plaintiff Arnold Levin is lead counsel and a member of the PSC in MDL 2047.  *Id.*  Mr. Levin is a resident of Philadelphia, Pennsylvania,

but has worked extensively in Louisiana.  *Id.*  However, the minimum contact inquiry for

specific personal jurisdiction is not focused upon the contacts of the plaintiffs, but instead with

the contacts of the foreign defendant and the nature of the claims arising from these contacts.

It is necessary to focus on defendant Cataphora's contacts with this forum.  Cataphora is

a California corporation which provides litigation support and document retrieval services.  *Id*.

Defendant Chadderdon is a principal of Cataphora and a resident of California.  *Id.*  Chadderdon

has never conducted business within Louisiana and has only traveled to Louisiana once on a

family trip as a child.  (R. Doc. 13-2).

With respect to Cataphora's involvement in this case, from April to June 2009, it sought

out business from counsel who are involved with MDL 2047, multidistrict litigation which is

consolidated in the U.S. District Court, Eastern District of Louisiana.  *See* (R. Doc. 6, Ex. D).  In

August and September 2009, the PSC and Cataphora entered into contract negotiations for a

contract in which Cataphora would provide litigation support services to the PSC for MDL 2047.

*See id.*  The contract was negotiated between a Cataphora employee based in Washington, D.C.

and a PSC member based in Florida. (R. Doc. 13-3).  On October 6, 2011, a contract was

executed between the PSC and Cataphora in California.  (R. Docs. 6, 13-3).  The PSC, shortly

thereafter, terminated the contract, alleging it contained an illegal fee provision.  *See* (R. Doc. 6).

No work was ever performed on or in furtherance of this contract.  (R. Doc. 13-3).

As a result of the PSC's termination of the contract, Cataphora filed suit in the Northern

District of California against the PSC and prevailed.  *See id.*  Following this litigation,

Chadderdon was contacted in California via telephone by a California writer for the law interest

blog Above the Law.  (R. Doc. 13-2).  Defendant Chadderdon made a series of allegedly

defamatory statements to this California writer that were published on Above the Law's website,

Abovethelaw.com, on September 26, 2011.  *See id.*; (R. Doc. 6).  Specifically, the following

comments attributed to Chadderdon were posted on this website:

> "These guys are the worst of hypocrites that you can possibly find. . . . They claim to be trying to help the little guy, but what they're doing is trying to put more money in their own pockets.  Everybody knows that, but this is a case that illustrates it beyond what I have even seen."

> "We got screwed. . . .  Their strategy from day one was to drag this out as long as possible to make it go away."

> The PSC told Cataphora, "Sue us if you dare."
> "The jury saw through it almost immediately. . . .  They were bored to tears with this."

> "We kicked their ass."  (R. Doc. 15-3).

The weight of the evidence demonstrates that Cataphora lacks minimum contacts with

Louisiana.  Neither Cataphora nor Mr. Chadderdon is a resident of Louisiana or has physically

been to Louisiana, other than Mr. Chadderdon's childhood trip to the State.  The comments at

issue refer to the position taken by the PSC as the defendants in the California breach of contract

litigation.  Also, the comments contain no mention of the Plaintiffs individually, but only of the

PSC generally of which Plaintiffs are members along with numerous other attorneys from

various states.  The PSC's contract with Cataphora was a private contract, tangential to the

PSC's actual litigation in this Court.  The comments are not in response to the MDL litigation in

this forum, but rather to the position taken by the PSC in the California litigation.  The contract

at issue in the California litigation was written in California and entered into by non-forum

representatives of each party.  The comments contain no reference to Louisiana or Plaintiffs'

Louisiana activities.  The statements were made in California to a California reporter.  The

statements were published on a national website which does not specifically target a Louisiana

audience.  No Louisiana sources were relied upon in making the comments.  The comments were not directed at Louisiana or aimed to cause harm there.

Because the Court finds that Cataphora lacks sufficient minimum contacts with Louisiana, as is required for personal jurisdiction, the Court need not address the second fairness prong of the personal jurisdiction test, but it is appropriate to decide whether this matter should be dismissed or transferred.

### C.    Venue

A court lacking personal jurisdiction over a defendant may still transfer the matter under either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a).  *Martin v. Nat'l R.R. Passenger Corp*., 2003 WL 21488119, at *2 (E.D. La. June 20, 2003)(citing *PaineWebber, Inc. v. The Chase Manhattan Private Bank*, 260 F.3d 453, 460 n.7 (5th Cir. 2001)); *Harris v. Nichols Concrete Equip. Co., Inc*., 20022 WL 31729490, at *4 (E.D. La. Dec. 2, 2002) (citing *Bentz v. Recile*, 778 F.2d 1026, 1027 (5th Cir. 1985)).  Under § 1404(a), a court may transfer a case, already in a proper venue, to a district where it might have been brought if doing so is in the convenience of the parties and witnesses and in the interests of justice.  *See id.*  Transfer of venue under § 1406(a) is appropriate where the original venue is improper and transfer, as opposed to dismissal, is in the interest of justice.  *See id.*  Determining which of these statutes applies depends on whether venue is proper or improper in this district.  *See id.*

Venue is proper in the following three situations:

(1) a judicial district in which any defendant resides, if all defendant are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.  28 U.S.C. § 1391(b).

None of these situations is present in this district.  Neither Cataphora nor Mr. Chadderdon reside in the Eastern District of Louisiana.  None of the substantial events giving rise to this litigation occurred in Louisiana.  Finally, the Court has already determined that it lacks personal jurisdiction over Cataphora.  Thus, the Court applies § 1406(a) to determine if it is in the interest of justice to transfer the case to "any district or division in which it could have been brought." 28 U.S.C. § 1406(a).  "'The district court has broad discretion in deciding whether to order a transfer.'" *Mays v. Yosef*, 214 F.3d 1350 (5th Cir. 2000) (quoting *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987)).

The Court finds it is in the interest of justice to transfer the present matter to the U.S. District Court for the Northern District of California.  This district is a proper venue because Cataphora and Mr. Chadderdon reside in California, a substantial part of the events giving rise to the claim occurred there, and, as residents of the State, personal jurisdiction attaches to both defendants there.  Also, sources and witnesses are more likely to be located in California, and the Northern District of California handled the breach of contract litigation underlying the present litigation.

## III.   CATAPHORA'S SPECIAL MOTION TO STRIKE PURSUANT TO LOUISIANA ANTI-SLAPP STATUTE

Cataphora also filed a Special Motion to Strike Pursuant to Louisiana Anti-SLAPP Statute.  (R. Doc. 15)**.**  Cataphora filed this Motion pursuant to Louisiana Code of Civil Procedure Article 971.  If this Court were to retain the case, it would apply Article 971, *see Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Hanna v. Plumer*, 380 U.S.

-16-

460, 465 (1965) (applying forum state's substantive law in diversity case); *Henry v. Lake Charles*

 *Am. Press, LLC*, 566 F.3d 164, 169 (5th Cir. 2009) (applying Article 971 in diversity case

seated in Louisiana forum), but because the Court has concluded it lacks personal jurisdiction

over Cataphora and is transferring the case to the Northern District of California, the Court

declines to address Cataphora's Motion and will allow the Northern District of California to

determine the issues raised therein, if appropriate. *See* Charles Alan Wright, Arthur R. Miller,

Edward H. Cooper, Joan E. Steinman, Catherine T. Struve, and Vikram David Amar, 14 D

Federal Practice and Procedure § 3827 (3d ed. 2012) ("[W]henever the original venue is

improper, so that transfer is under Section 1406(a), the transferee court should apply whatever

law it would have applied had the action been properly commenced there.").

IV.     **CONCLUSION**

        For the foregoing reasons, **IT IS ORDERED** that Cataphora's Motion to Dismiss is

**GRANTED**. **IT IS FURTHER ORDERED** that this matter is transferred to the U.S. District

Court for the Northern District of California**. IT IS FURTHER ORDERED** that Cataphora's

Motion to Strike is **DENIED AS MOOT**.


        New Orleans, Louisiana this 19th day of September, 2012.

                                        _____
                                        United States District Judge